No. 7:19-cv-10231-NSR

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

WINNERS INDUSTRY CO., LTD.,

*Appellant,*

- V. -

SEARS HOLDINGS CORPORATION, *et al.*,

*Appellees.[1]*

---

[1] The Appellees/Debtors in these chapter 11 cases, along with the last four digits of each Appellees' federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation

—————

**ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (DRAIN, J.)**

**IN RE SEARS HOLDINGS CORPORATION, ET AL., CASE NO. 18-23538**

———

## JOINT RESPONSE BRIEF OF APPELLEES

———

---

(5365); and SRe Holding Corporation (4816).  The location of the Appellees'
corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C.
David J. Lender
Gregory Silbert
Garrett A. Fail
Jared R. Friedmann
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray.Schrock@weil.com
David.Lender@weil.com
Gregory.Silbert@weil.com
Garrett.Fail@weil.com
Jared.Friedmann@weil.com

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7877
Facsimile: (214) 746-7777
Paul.Genender@weil.com

*Attorneys for Appellees Sears Holdings Corporation, et al.*

AKIN GUMP STRAUSS HAUER
 & FELD LLP
Z.W. Julius Chen
Robert S. Strauss Tower
2001 K Street, NW
Washington, DC 20006-1037
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
chenj@akingump.com

AKIN GUMP STRAUSS HAUER
 & FELD LLP
Ira S. Dizengoff
Philip C. Dublin
Joseph L. Sorkin
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
pdublin@akingump.com
jsorkin@akingump.com

*Attorneys for the Official Committee of Unsecured Creditors
of Sears Holdings Corporation, et al.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rules 8012 and 8014(a)(1) of the Federal Rules of Bankruptcy Procedure, Appellees Sears Holdings Corporation and its debtor affiliates (collectively, "**Sears**") by and through their undersigned counsel, hereby state:

1.  Sears Holdings Corporation ("**Sears Holdings**") is a publicly traded corporation.  As of the filing of Sears's chapter 11 cases, the only corporations, as defined in Section 101 of Title 11 of the United States Code, that own greater than 10% of Sears Holdings' equity interests are affiliates of Edward S. Lampert, including ESL Investments, Inc. ("**ESL**"), which on an aggregate basis own approximately 49% of Sears Holdings' equity interests.

2.  Sears Holdings owns 100% of the membership or equity interests (whichever is applicable) in the following Appellees:  Kmart Holding Corporation ("**Kmart Holding**"), Kmart Operations LLC, Sears Operations LLC, ServiceLive, Inc., and Sears, Roebuck and Co. ("**Roebuck**").

3.  Kmart Holding owns 100% of the equity interests in Kmart Corporation ("**Kmart Corp.**") and 20% of the equity interests in Sears Holdings Management Corporation ("**SHMC**").  Roebuck owns the remaining 80% of the equity interests in SHMC.

4.  Kmart Corp. owns 100% of the membership or equity interests (whichever is applicable) in the following Appellees:  Kmart of Michigan, Inc., Big

Beaver of Florida Development, LLC, KLC, Inc., Kmart of Washington LLC, Kmart Stores of Illinois LLC, Kmart Stores of Texas LLC, SHC Desert Springs LLC, Troy Coolidge No. 13 LLC, STI Merchandising, Inc., and MyGofer LLC.  Kmart Corp. also owns 100% of the equity interests in Appellee KBL Holding Inc., which owns 100% of the equity interests in BlueLight.com, Inc., also an Appellee in these chapter 11 cases.  BlueLight.com, Inc., owns 100% of the membership interests in Appellee Kmart.com LLC.

5.      SHMC owns 100% of the equity interests in Appellee Sears Brands Business Unit Corporation ("**SBBU**").  SBBU owns 100% of the equity interests in Sears Buying Services, Inc., which owns 100% of the equity interests in Sears Brands Management Corporation.   SBBU also owns 100% of the membership interests in Sears Brands, L.L.C.

6.      Roebuck owns 100% of the membership or equity interests (whichever is applicable) in the following Appellees:   A&E Factory Service, LLC, A&E Signature Service, LLC, A&E Lawn & Garden, LLC, Innovel Solutions, Inc., MaxServ, Inc., A&E Home Delivery, LLC, Sears Home Improvement Products, Inc., Sears Development Co., Private Brands, Ltd., Sears Roebuck Acceptance Corp., Sears, Roebuck de Puerto Rico, Inc., Sears Home & Business Franchises, Inc., Sears Insurance Services, L.L.C., Sears Protection Company, SYW Relay LLC,

Wally Labs LLC, and Sears Protection Company.  Sears Protection Company owns 100% of the membership interests in Sears Protection Company (Florida), L.L.C.

7.     Roebuck also owns 100% of the equity interests in Appellee FBA Holdings Inc., which owns 100% of the membership or equity interests (whichever is applicable) in the following Appellees:  California Builder Appliances, Inc., Florida Builder Appliances, Inc., SOE, Inc., and StarWest, LLC.

8.     Sears Procurement Services, Inc. owns a 100% membership interest in Appellee Sears Holdings Publishing Company, LLC.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................................i

INTRODUCTION ............................................................................................1

STATEMENT OF THE ISSUE PRESENTED .........................................................2

STANDARD OF REVIEW .................................................................................2

STATEMENT OF THE CASE ..............................................................................2

    I.    Factual Background...............................................................................2

        A.    Sears ............................................................................................2

        B.    Winners .......................................................................................3

    II.    Procedural Background .........................................................................4

        A.    Procedural Background of the Bankruptcy................................4

        B.    Winners's Motion For Administrative Expense Claims............5

SUMMARY OF THE ARGUMENT .......................................................................6

ARGUMENT ..................................................................................................7

    I.    The Bankruptcy Court Correctly Interpreted Section 503(b)(1)...........7

        A.    Section 503(b)(1) Requires a Post-Petition Transaction with a Debtor-in-Possession ......................................................7

        B.    Winners Did Not Transact With or Provide Consideration to the Debtor-in-Possession ......................................................12

        C.    Winners's Remaining Arguments Should Be Rejected............13

CONCLUSION ................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A.C.E. Elevator Co.*,
   347 B.R. 473 (Bankr. S.D.N.Y. 2006) ............................................................ 8, 11

*In re A. Marcus Co.*,
   64 B.R. 207 (Bankr. N.D. Ill. 1986) ............................................................ 11, 20

*In re Adelphia Bus. Sols., Inc.*,
   296 B.R. 656 (Bankr. S.D.N.Y. 2003) ............................................................ 8, 9

*In re Belmonte*,
   931 F.3d 147 (2d Cir. 2019) ............................................................................ 2

*In re BH S & B Holdings LLC*,
   426 B.R. 478 (Bankr. S.D.N.Y. 2010) ............................................................ 11

*In re CIS Corp.*,
   142 B.R. 640 (Bankr. S.D.N.Y. 1992) ............................................................ 16

*Collingwood Grain, Inc. v. Coast Trading Co.* (*In re Coast Trading
   Co.*),
   744 F.2d 686 (9th Cir. 1984) ................................................................ 13, 14, 15

*In re Drexel Burnham Lambert Grp., Inc.*,
   134 B.R. 482 (Bankr. S.D.N.Y. 1991) ............................................................ 12

*In re Eleva, Inc.*,
   235 B.R. 486 (10th Cir. B.A.P. 1999) ............................................................ 16

*In re Enron Corp.*,
   279 B.R. 79 (Bankr. S.D.N.Y. 2002) ............................................................ 8, 15

*In re Grubb & Ellis Co.*,
   478 B.R. 622 (Bankr. S.D.N.Y. 2012) ............................................................ 8

*In re Hackney*,
   351 B.R. 179 (Bankr. N.D. Ala. 2006) ............................................................ 11

*Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*,
   547 U.S. 651 (2006)......................................................................................18

*In re Ideal Mortg. Bankers, Ltd.*,
   539 B.R. 409 (Bankr. E.D.N.Y. 2015), *aff'd sub nom. Holzer v.
   Barnard*, 2016 WL 4046767 (E.D.N.Y. July 27, 2016)......................................8

*In re Jartran, Inc.*
   732 F.2d 584 (7th Cir. 1984) .............................................................................9

*In re John Clay & Co.*,
   43 B.R. 797 (D. Utah 1984)..............................................................................14

*In re K Chemical Corp.*,
   177 B.R. 89 (Bankr. D. Conn. 1995) ..........................................................10, 13

*In re Lucre, Inc.*,
   434 B.R. 807 (Bankr. W.D. Mich. 2010) ..........................................................11

*In re Mayer Pollock Steel Corp.*,
   157 B.R. 952 (Bankr. E.D. Penn. 1993) ...............................................10, 11, 13

*Nathanson v. N.L.R.B.*,
   344 U.S. 25 (1952)...........................................................................................18

*In re Nevins Ammunition Inc.*,
   79 B.R. 11 (Bankr. D. Idaho 1987)..............................................................11, 20

*Sampsell v. Imperial Paper & Color Corp.*,
   313 U.S. 215 (1941)..........................................................................................18

*In re Sheehan Mem'l Hosp.*,
   377 B.R. 63 (Bankr. W.D.N.Y. 2007) ...............................................................11

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities
   Project, Inc.*,
   135 S. Ct. 2507 (2015)......................................................................................18

*In re Treco*,
   240 F.3d 148 (2d Cir. 2001) ...............................................................................2

*Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*,
   789 F.2d 98 (2d Cir. 1986) ......................................................................*passim*

*In re World Imports, Ltd.*,
    862 F.3d 338 (3d Cir. 2017) ..........................................................................19, 20

**Statutes**

11 U.S.C. § 503(b)(1)........................................................................................*passim*

11 U.S.C. § 503(b)(9)........................................................................................*passim*

11 U.S.C. § 547(c) ....................................................................................................16

Uniform Commercial Code........................................................................14, 15, 16

**Other Authorities**

4 COLLIER ON BANKRUPTCY (16th ed. 2019) ........................................................9, 18

## <u>INTRODUCTION</u>

This appeal by Winners Industry Co., Ltd. ("**Winners**") concerns Section 503(b)(1) of the Bankruptcy Code, which elevates in payment priority actual and necessary administrative expenses incurred by a creditor in preserving a debtor's estate.  For the reasons addressed in this Response, Winners is not entitled to a Section 503(b)(1) administrative priority claim.

Every single case interpreting Section 503(b)(1) that Winners cited or Appellants could find is consistent:  this section only protects transactions completed *after* the debtor filed its bankruptcy petition.  And, for an action to be a post-petition transaction, controlling Second Circuit case law rooted in longstanding and widely accepted precedent requires "the consideration supporting the claimant's right to payment [be] both supplied to and beneficial to the debtor-in-possession." *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986).

By the terms of the contracts between Winners and Sears, Winners had to deliver Christmas trees and wreaths in China, title would transfer to Sears in China, risk of damage to or loss of the goods transferred to Sears in China, and Winners would trigger its right to receive payment from Sears based on completing those actions in China.  The last event in China occurred two weeks before the petition date, after which Winners had no further obligations and did nothing for Sears except wait for payment.  Winners does not claim it or any of its agents performed any act

at all post-petition—the key criterion for the administrative priority Winners seeks. Under controlling case law, unopposed by any case and ratified by Congressional reenactment, Winners has no Section 503(b)(1) administrative priority claim.

## STATEMENT OF THE ISSUE PRESENTED

Did the bankruptcy court correctly determine as a matter of law that Winners was not entitled to an administrative expense claim under Section 503(b)(1) of the Bankruptcy Code based solely on the arrival of goods by a common carrier to Sears after the petition date?

## STANDARD OF REVIEW

Legal conclusions are reviewed *de novo*. *See In re Belmonte*, 931 F.3d 147, 152 (2d Cir. 2019). As such, questions of statutory interpretation are reviewed *de novo*. *See In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001).

## STATEMENT OF THE CASE

**I.** **Factual Background**

*A.* *Sears*

Since its inception more than a century ago, Sears has transformed its business many times—from one man selling unwanted watches to his coworkers to becoming the largest retailer in the world. A-4–5, 10. In recent years, however, a confluence of factors—among them, declining revenues, poor market conditions for retailers, and cash flow and liquidity issues—overwhelmed Sears's ability to adapt short of bankruptcy. A-36–39. Despite Sears's long history and iconic status, its

highly-leveraged capital structure and liquidity challenges forced it to file for Chapter 11 bankruptcy protection on October 15, 2018 (the "**Petition Date**").  A-2.

### B. Winners

In each of the four years preceding Sears's bankruptcy, Winners manufactured and supplied Sears with artificial Christmas trees and wreaths.  A-291–93 (Declaration of Kitty Chow, Winners's director).[1]  Other than the quantity ordered, the terms remained substantially the same.  *See* A-291–93 (identifying the similar terms).  As relevant here, once Winners finished manufacturing the goods, it would take them to a port outside Hong Kong and drop them off with a freight forwarder for passage by sea.  A-292.  The goods always shipped "FOB China," meaning that as soon as Winners left them with the freight forwarder in China, title passed to Sears, and Winners's contractual obligations were fully satisfied.  A-292 ("F.O.B." means "free on board"); *see, e.g.*, A-247.  Thus, if the goods were damaged or lost before reaching Sears's stores, Winners was due the full contract price.

This case concerns goods that Winners finished delivering to port in China on October 3, 2018—nearly two weeks *before* the Petition Date.  A-292; A-230 (spreadsheet supplied by Winners detailing Winners's shipments).  As of that day,

---

[1] Sears has not yet had the opportunity to verify Winners's factual assertions.  Sears offers these facts and cites them throughout this brief based on Winners's filings only for the purposes of resolving the legal question that likely applies to some of Winners's shipments.

Sears had title to all the goods, bore the full risk of their damage or destruction, and owed Winners the entire contract price to be paid according to the usual terms. A-293 (74 days after the day the goods set sail).  Roughly two weeks later, however, Sears filed for bankruptcy protection, on October 15, 2018.

## II.   Procedural Background

### A.   *Procedural Background of the Bankruptcy*

On the Petition Date, Sears filed a motion that asked the bankruptcy court to reassure Sears's vendors that those with valid administrative claims would be paid (the "**Vendor Comfort Motion**").  But the Vendor Comfort Motion and proposed order, by its terms, did not "create, nor [was it] intended to create, any rights in favor of or enhance the status of any claim held by, any party."  A-198 ¶ 13.  The bankruptcy court signed the order on an interim basis on October 16, 2018, and on a final basis on November 20, 2018.  A-205; A-211.

At Sears's request, the bankruptcy court set a deadline of April 10, 2019 (the "**General Bar Date**") for proofs of claim to be filed.  A-295.  A few weeks before the General Bar Date, the bankruptcy court also approved Sears's proposed claims-objection procedures.  A-624.

**B.    Winners's Motion For Administrative Expense Claims**

Winners filed a motion for allowance and payment of administrative expense claims on December 21, 2018.  A-215.  For the goods at issue here,[2] Winners claimed administrative priority, arguing that Sears had promised to pay "obligations that arise in connection with the postpetition delivery of necessary goods" under Section 503(b)(1) of the Bankruptcy Code.  A-223 (quoting A-188).  Based on that claim, Winners sought immediate payment.  A-224.

Sears objected on the ground that Winners did not hold a valid Section 503(b)(1) claim for the goods at issue because that claim arose when Winners completed its obligations under the purchase orders *before* the Petition Date, and thus did not transact with the debtor-in-possession post-petition, as the law requires.  A-298-302.  Sears also noted that the bankruptcy court had established an orderly means of resolving claims, like Winners's, to avoid a race to the courthouse to file ad hoc motions to compel payment, and that Winners's demand for immediate payment of its claim was therefore premature.  A-296–97.  After five other creditors moved for immediate payment on similar grounds, Sears filed an omnibus objection

---

[2]    Winners's motion also sought administrative expense claims under Section 503(b)(9) of the Bankruptcy Code for other shipments.  The motion was bifurcated and those shipments are not part of this appeal.

for the bankruptcy court's convenience incorporating its objection to Winners's motion.  A-350–61.

At a May 21, 2019 hearing, the bankruptcy court resolved Winners's and other creditors' motions to compel payment (the "**May 21 Hearing**").  A-3742 (87:4–10).  The bankruptcy court rejected each creditor's argument in turn.  A-3737–87 (82:6–132:23); *see* A-3743–54 (88:10–99:7) (Winners's argument).   Ultimately, the bankruptcy court found "[t]he mere fact of delivery post-petition where the transaction was entered into prepetition is insufficient to give rise to [a Section 503(b)(1)] claim."  A-3787 (132:12–14).  A few months later, at the same time the bankruptcy court confirmed Sears's liquidating plan, it entered an order denying Winners's and the other creditors' motions for payment for the reasons discussed at the May 21 Hearing.  A-1555–97; A-1709–11.[3]

## SUMMARY OF THE ARGUMENT

Winners's claim under Section 503(b)(1) of the Bankruptcy Code does not meet the requirements for administrative expense priority.   Consistent with longstanding bankruptcy law, Winners's claim arose upon completion of its

---

[3] The Court reserved judgment on whether Winners took any actions (or non-actions) postpetition to entitle Winners to a Section 503(b)(1) claim.  A-1711 ("[T]his Order does not address so-called 'inducement claims' and claims under section 503(b)(9) of the Bankruptcy Code.").  The only question the Court decided and is therefore on appeal is whether the mere arrival of Sears's goods postpetition was sufficient to give rise to the priority claim.

purchase-order obligations and transference of title to Sears *prior to Sears's Chapter 11 filing*. That is too soon under controlling Second Circuit precedent— not to mention a mountain of other authority—holding that Section 503(b)(1) priority does not extend to completed *pre-petition* transactions (except as specifically provided).

Winners asserts that its claim arose upon Sears's receipt of the goods from Sears's common carrier (a third party) long after Winners's responsibility for the goods ceased. But Winners has no authority to support that reading of Section 503(b)(1), and so instead attempts to cobble together a more favorable reading by borrowing the word "received" from Section 503(b)(9), which concerns receipt of goods *pre-petition*. But neither Section 503(b)(9) itself nor the statutory canons that Winners misapplies requires a different interpretation of Section 503(b)(1).

## **ARGUMENT**

### I.    **The Bankruptcy Court Correctly Interpreted Section 503(b)(1)**

#### A.    *Section 503(b)(1) Requires a Post-Petition Transaction with a Debtor-in-Possession*

Section 503(b)(1) of the Bankruptcy Code provides that a party is entitled to an administrative expense claim for the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). The Second Circuit limits such administrative expenses to those that arise "out of a transaction between the creditor

and the bankrupt's trustee or *debtor in possession*" and only where "the consideration supporting the claimant's right to payment was both supplied to and beneficial to the *debtor-in-possession* in the operation of the business." *Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc.* 789 F.2d 98, 101 (2d Cir. 1986) (emphases added) (internal citations omitted).

The requirements that there be a transaction with, and consideration for, the trustee or "debtor-in-possession" makes clear that Section 503(b)(1) administrative expense claims are limited to only those that mature post-petition, not pre-petition. *See In re Adelphia Bus. Sols., Inc.*, 296 B.R. 656, 663 (Bankr. S.D.N.Y. 2003) ("[T]he expression 'transaction with the debtor-in-possession' [is used] in the context of comparing and contrasting that to a transaction with the *pre-petition debtor*."); *see also In re Ideal Mortg. Bankers, Ltd.*, 539 B.R. 409, 430–31 (Bankr. E.D.N.Y. 2015) (Section 503(b)(1)(A) "reinforces the concept that the expenses incurred in 'preserving the estate' must have been incurred postpetition and conferred a benefit to the bankruptcy estate as no bankruptcy estate existed prior to the commencement of the case."), *aff'd sub nom. Holzer v. Barnard*, 2016 WL 4046767 (E.D.N.Y. July 27, 2016); *In re A.C.E. Elevator Co.*, 347 B.R. 473, 479, 481 (Bankr. S.D.N.Y. 2006). Simply put, "there must be a postpetition transaction." *In re Grubb & Ellis Co.*, 478 B.R. 622, 624 (Bankr. S.D.N.Y. 2012).

This is in line with the purpose of Section 503(b)(1), which is to "encourage third-parties to supply the debtor-in-possession with goods and services with the goal of achieving a reorganization to benefit all creditors," *In re Enron Corp.*, 279 B.R. 79, 86 (Bankr. S.D.N.Y. 2002), and "encourage vendors to deal with the *post-petition estate.*"   *Adelphia Bus. Sols.*, 296 B.R. at 663 (emphasis added). Therefore, there is no administrative expense claim where the transaction is completed or the consideration is furnished pre-petition. *See McFarlin's*, 789 F.2d at 103–04 (affirming the denial of administrative expense treatment for "withdrawal liability" under pension laws where consideration was provided pre-bankruptcy).  In contrast, Section 503(b)(9), by its very terms, was enacted to give priority to the claims of vendors who provided goods to the debtors pre-petition, that is, to encourage vendors to continue doing business with companies in distress before they become debtors-in-possession in a bankruptcy case.

Applying these basic principles to closely analogous facts, courts have consistently rejected claims just like Winners.  For example, in *In re Jartran, Inc.*— which the Second Circuit relied on in establishing the *McFarlin's* test—a debtor irrevocably committed to pay for advertising pre-petition, but the ads were published post-petition and payment likewise only became due post-petition.  *See* 732 F.2d 584, 585–86 (7th Cir. 1984).  The Seventh Circuit held that payment for the ads was a pre-petition expense because "no inducement by the debtor-in-possession was

required because the liability for the costs of the ads was irrevocably incurred before the petition was filed." *Id.* at 588; *see also* 4 COLLIER ON BANKRUPTCY ¶ 503.06 (16th ed. 2019) (finding *Jartran* "illustrates [Section 503(b)(1)] policy well"). The same is true here.

Likewise, in *In re K Chemical Corp.*, there was no administrative expense claim for a vendor that delivered chemicals pre-petition to a third-party carrier hired by the debtor who later delivered the chemicals to the debtors' warehouse post-petition. *See* 188 B.R. 89, 95 (Bankr. D. Conn. 1995). The court rejected the vendor's request for an administrative expense claim because the pre-petition delivery to the common carrier was not a transaction with a debtor-in-possession. *Id.* at 95 n.5. (noting that title to the goods transferred upon delivery to the carrier). Instead, as the court highlighted, the sale transaction was completed and the claim arose when the vendor delivered goods to the agreed place of delivery pre-petition. *Id.* This is precisely what happened here.

Similarly, in *In re Mayer Pollock Steel Corp.*, the court held that the timing of the vendor's delivery of goods to the common carrier was the most critical fact. 157 B.R. 952, 963 (Bankr. E.D. Penn. 1993) ("Although [Vendor] argues that delivery was not complete until the scrap reached [the Debtor], we believe that this argument is factually inaccurate. [Vendor] completed *its* performance with respect to delivery as soon as it loaded [the common carrier's] cars . . . . Therefore, the sales

of the scrap in issue in these five shipments occurred pre-petition.").  In rejecting the vendors' claim, the court clarified that a vendor cannot have an administrative claim when the vendor completed its performance pre-petition by delivering the goods to a common carrier, even though the goods were received by the debtor-in-possession post-petition.  *Id.*  Again, this case is directly on point.[4]

These and other cases make clear that the turning point for Section 503(b)(1) priority is when "the consideration supporting the claimant's right to payment was . . . supplied."  *McFarlin's*, 789 F.2d at 101; *A.C.E. Elevator*, 347 B.R. at 481 ("[T]he law in this Circuit that administrative priority is not based simply on an obligation's due date, but, rather, depends on the date of the consideration underlying the claim.").  For all of them, consideration is provided when the creditor completed its performance and the obligation to pay arose.  *See, e.g.*, *In re BH S & B Holdings LLC*, 426 B.R. 478, 486–87 (Bankr. S.D.N.Y. 2010); *In re Sheehan Mem'l Hosp.*, 377 B.R. 63, 67 (Bankr. W.D.N.Y. 2007); *In re Hackney*, 351 B.R. 179, 184 (Bankr. N.D. Ala. 2006) ("[T]o qualify for 'administrative expense' status

---

[4] Other cases with remarkably similar facts have reached the same conclusion.  *See, e.g.*, *In re Nevins Ammunition Inc.*, 79 B.R. 11, 15 (Bankr. D. Idaho 1987) (finding no administrative claim when vendor delivered goods to a common carrier pre-petition under a pre-petition shipment contract); *In re A. Marcus Co.*, 64 B.R. 207, 208, 210 (Bankr. N.D. Ill. 1986) (finding no inducement or transaction with a post-petition debtor when foreign vendor delivered goods to pre-petition debtor in Japan, F.O.B. Japan, that were later received in the United States after the petition date).

under section 503(b) . . . an expenditure must have occurred, or an obligation must have been incurred, postpetition."); *In re Lucre, Inc.*, 434 B.R. 807, 821 (Bankr. W.D. Mich. 2010) (noting priority requires post-petition "inducement").

### B.    *Winners Did Not Transact With or Provide Consideration to the Debtor-in-Possession*

Winners has not carried—and cannot carry—its burden to establish a Section 503(b)(1) administrative priority claim for the goods at issue. *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 482, 489 (Bankr. S.D.N.Y. 1991) ("The claimant bears the burden of establishing its entitlement to administrative expense priority treatment.").  Winners alleges it delivered goods *pre-petition* to a freight forwarder in China.  Once Winners had dropped off its goods at the port in China, its contractual obligations were complete and no further performance was required. *See* A-291–93.   At that time, title transferred to Sears, Winners's contractual obligations were completed, and Sears was invoiced, creating a *pre-petition* obligation.  All that was left for Winners to do was to await payment, just like Sears's other non-priority, pre-petition creditors.

Winners's primary basis for its alleged entitlement to an administrative claim is that the goods were *delivered* to Sears by a third party after the Petition Date.  But, as explained above, because the contract specified "FOB China," the relevant flash point was when Winners left the goods pre-petition with the freight forwarder in China, not the subsequent, post-petition delivery to Sears in the United States.  *See*

*supra* Part I.A.  Thus, the transaction giving rise to Winners's claim (*i.e.,* the transfer of title of goods to Sears in exchange for the right to payment) occurred prior to the Petition Date.  Because title transferred and payment was due pre-petition, the subsequent shipments by third-party common carriers cannot create a post-petition administrative expense claim for Winners.  *See, e.g.*, *K Chemical*, 188 B.R. at 95; *Mayer Pollock*, 157 B.R. at 963.

### C.     *Winners's Remaining Arguments Should Be Rejected*

#### 1.     *Winners's attempts to expand the scope of qualifying post-petition transactions is unavailing.*

Faced with consistent case law rejecting claims just like theirs, Winners alleges that some courts have granted Section 503(b)(1) administrative priority for what Winners calls "Pre/Post Goods," *i.e.*, "goods under prepetition purchase orders that are delivered postpetition into the physical possession of a debtor, including the Debtors, as debtor(s) in possession."  Winners Br. 15 n.5, 21.  But the cases Winners cites are entirely consistent with the cases cited above, *see supra* Part I.A, because they both involve satisfaction of the delivery terms in the relevant contracts *post-petition*.  That is different from what happened in the instant case.

For example, in *Collingwood Grain, Inc. v. Coast Trading Co.* (*In re Coast Trading Co.*), grain was due by train F.O.B. *destination*, which meant the seller retained title and bore the risk of damage during transit, and therefore did not complete its performance under the contract until the grain was received by the

purchaser.   744 F.2d 686, 688, 693 (9th Cir. 1984).   In between shipment and delivery, the purchaser declared bankruptcy, but the seller delivered the grain anyway and completed its performance post-petition.  *Id*. at 693.

Under Section 503(b)(1), the central issue for the Ninth Circuit—as here—was when performance was completed, which, by the very terms of the contract, was upon delivery to the debtor-in-possession.  *Id*. ("The contract, however, required Collingwood to perform by *delivery* of the grain, not shipment.  The risk of loss remained with Collingwood during shipment.").  Because the contract specified "F.O.B. the stockyards," if "the grain had not been delivered, we would not consider [the seller] to have rendered adequate performance under the contract simply by shipping the grain."  *Id.* at 688, 693.   The creditor, therefore, was awarded administrative priority because it "rendered adequate performance" post-petition by delivery to the specified destination in accordance with the relevant terms of the contract.  *Id*. at 693.  The F.O.B. on board purchase orders at issue here foreclose the same result.[5]

---

[5] Similarly, in *In re John Clay & Co.*, whether the debts were pre- or post-petition depended on when the debtor had received the sheep at the "sheep producer's place of business" because that is when payment became due and title passed to the debtor under the relevant agreements.  43 B.R. 797, 807–08 (D. Utah 1984).

Winners next argues that certain alleged "legal relations" under the Uniform Commercial Code ("**U.C.C.**") mean that Winners somehow continued to "transact" with Sears post-petition, despite satisfying the plain terms of the parties' contract pre-petition.[6]  Winners Br. 21–22.  In particular, Winners claims that the U.C.C.'s rights of recall and forbearance support its interpretation.  But Winners cites no authority to support its argument that these provisions of the U.C.C. alter the traditional Section 503(b)(1) analysis.[7]  And even assuming the states whose law governs these shipments enacted the "recall" provisions of the U.C.C., a right of recall says nothing about when consideration was supplied and performance complete.  Those facts—which are the only relevant considerations for Section 503(b)(1)—are found in the parties' contract.

---

[6] Winners also attempts a sleight of hand.  It is careful not to claim it was the party doing the delivery: "the Winners Goods *delivered* after the Petition Date were accepted by the Debtors."  Winners Br. 22 (emphasis added).  Winners uses a passive participle to hide who did the delivering, namely the common carrier Sears selected, hired, and paid for.  Yet, in the very next sentence, Winners shifts to an abstract "Vendors" and the active "complete delivery" to try to conflate itself with such active deliverers: "Vendors *who complete delivery* of Pre/Post Goods have thus achieved the requisite postpetition relations to satisfy the postpetition transaction element as a matter of law."  *Id.* (emphasis added).

[7] Only one case even mentions a right of recall as supporting an administrative claim, and that was merely as an adjunct to the traditional analysis.  *Coast Trading*, 744 F.2d at 693.  This bare, unactuated right is simply not a "postpetition transaction."

Nor is forbearance of that alleged right a sufficient benefit to Sears to satisfy Winners's burden under Section 503(b)(1).  Mere relinquishment of a questionable legal right is insufficient and too speculative to support an administrative expense claim.  *See Enron*, 279 B.R. at 86 ("[A] speculative benefit or the mere potential for benefit is not enough to warrant an administrative claim priority."); *In re CIS Corp.*, 142 B.R. 640, 644 (Bankr. S.D.N.Y. 1992) ("[A] mere potential benefit does not qualify as a benefit for the purpose of determining administrative expense status."). Indeed, other courts have already determined that forbearance from exercising a stop-shipment right is insufficient to form a "new value" preference defense.  *See In re Eleva, Inc.*, 235 B.R. 486, 489–90 (10th Cir. B.A.P. 1999) (holding "forbearance from stopping the shipment does not constitute new value" for purposes of a defense to a preference action); *see also* 11 U.S.C. § 547(c) (providing that a transferee shall not be liable for an avoidable preference if the transferee provided "new value" to the debtor).  Thus, the so-called "legal relations" that Winners relies on from the U.C.C. fail to satisfy the requirements for finding administrative priority.

2.     *The Enactment of Section 503(b)(9) Did Not Alter Section 503(b)(1)*

Unable to provide any cases that support its entitlement to Section 503(b)(1) priority, Winners instead claims that a separate subsection of Section 503(b)—which does not mention, incorporate, or cross-reference Section 503(b)(1)—somehow overrode the interpretation universally adopted by courts.  According to Winners,

Section 503(b)(9),[8] which specifically concerns goods "received" within 20 days of the petition date (*i.e.*, *pre-petition*), requires reading the word "received" into Section 503(b)(1) as well.  Not so.  Tellingly, Winners can cite no authority to support its shoehorning of Section 503(b)(9)'s "received" into Section 503(b)(1). There is simply no case that has adopted that approach, and for good reason.

First, Congress reenacted Section 503(b)(1), with only minor changes,[9] at the same time it adopted Section 503(b)(9).  When Congress amends a statute while

---

[8] Section 503(b)(9) provides for administrative expense claims for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."  11 U.S.C. § 503(b)(9).

[9] Effectively, the only change to Section 503(b)(1) was the addition of a second example of an actual and necessary cost:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--

(1)(A) the actual, necessary costs and expenses of preserving the estate, including--

(i) wages, salaries, ~~or~~ <u>and</u> commissions for services rendered after the commencement of the case; and

(ii) <u>wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to</u>

maintaining its operative language, Congress is presumed to adopt the prior judicial interpretation of the statute. *See Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2520 (2015). Thus, by reenacting Section 503(b)(1) substantially unchanged after such widespread, unanimous opinion about its meaning, Congress ratified that meaning. *Id.*

Second, statutes like Section 503(b)(1) that allow priority claims in bankruptcy are narrowly construed. *See, e.g.*, *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006) ("[P]rovisions allowing preferences must be tightly construed."). As such, the alleged grant of priority status must be clear. *See Nathanson v. N.L.R.B.*, 344 U.S. 25, 29 (1952) ("The theme of the Bankruptcy Act is 'equality of distribution' . . . and if one claimant is to be preferred over others, the purpose should be clear from the statute." (quoting *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941))); COLLIER ON BANKRUPTCY ¶ 507.01 ("Because priorities grant special rights to the holders of priority claims, priorities under the Code are to be narrowly construed. A party must fit clearly within the

---

whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title; (text struck through indicates text removed, and text underlined indicates text added).

requirements of the priority statute to be accorded priority status."). Therefore, Section 503(b)(9) cannot be read to alter Section 503(b)(1) by inference, as Winners argues.

Third, Winners misapplies the canons it purports to use: harmonious reading, non-absurdity, inter-circuit continuity, and Congressional ratification. Winners Br. 33–36. For reasons just discussed, Congressional ratification reinforces, rather than undermines, the longstanding rule that Section 503(b)(1) applies only to post-petition transactions. Winners's argument assumes that Section 503(b)(9) ought to be interpreted as the Third Circuit interpreted it in *In re World Imports, Ltd.*, 862 F.3d 338 (3d Cir. 2017).

However, the Court need not interpret Section 503(b)(9) at all. The Second Circuit has not interpreted Section 503(b)(9), but it has spoken clearly on Section 503(b)(1). *See McFarlin's*, 789 F.2d at 103–04. This Court is bound by that interpretation of Section 503(b)(1) and should therefore refrain from opining on Section 503(b)(9), because it is not directly at issue, and should not adopt Winners's flawed reasoning, which would conflict with binding Second Circuit precedent.

Nothing in *World Imports* suggest otherwise. *World Imports* focused on a single word in Section 503(b)(9), "received," which does not appear in any form in

Section 503(b)(1).[10]  Sears disputes whether *World Imports* was correctly decided,[11] but even assuming *World Imports* interpreted "received" correctly, that interpretation is irrelevant to the meaning of "the actual, necessary costs and expenses of preserving the estate" in Section 503(b)(1).  Nor does *World Imports* definition of "received" alter the Section 503(b)(1) standard adopted by courts around the country (including Winners's own cases) that focuses on whether delivery pursuant to the relevant contract is completed post-petition.  *See, e.g.*, *Nevins Ammunition*, 79 B.R. at 15; *A. Marcus Co.*, 64 B.R. at 208, 210.  Indeed, *World Imports* specifically distinguished between delivery and receipt when defining the word "received" in Section 503(b)(9).  *See id.* at 862 F.3d at 346.  Thus, to the extent *World Imports* is relevant at all, it is consistent with all of the cases interpreting Section 503(b)(1).

3.  *Winners's Inducement Theory Lacks Any Support and Is Not the Subject of This Appeal.*

Winners also tries to make much of the Vendor Comfort Motion.  This argument misses the mark.  Sears proposed that the bankruptcy court issue an order providing that "[a]ll undisputed obligations of the Debtors arising from the

---

[10] Winners uses "receive" or its variants 16 times in the 13 pages it purports to analyze Section 503(b)(1), which does not contain that word.  *See* Winners Br. 19–32.

[11] *See* ECF 5237 (Sears's Omnibus Objection); ECF 6372 (Sears's Omnibus Reply).

postpetition delivery or shipment . . . of goods under the Prepetition Orders are granted administrative expense priority status pursuant to Section 503(b)(1)(A) of the Bankruptcy Code."   A-209.   Winners focuses on the "postpetition delivery" portion of these quotes, but the operative phrase is "obligations [that] aris[e]."  Sears made clear that it was not intending to overturn long-established and unanimous precedent—or to gratuitously add millions of dollars of administrative expenses to the struggling estates—by adding:  "nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party."[12] A-210; *see* A-2994–95 (123:3–5, 124:9–10) ("Court: As I read it, this order doesn't change anyone's rights under the statute . . . .  [A]gain, the order doesn't change anyone's rights under the statute.").[13]  Given this qualifying language, Sears did not induce Winners into doing anything post-petition.  Nor could it because Winners had completed performance pre-petition.  Even more, the order of the Bankruptcy Court from which Winners appeals did not address and in fact expressly preserved all of

---

[12] Winners's appeal to "established chapter 11 practice" fails for the same reason.

[13] Sears also vehemently disputes Winners's accusations and insinuations that Sears is employing dilatory tactics for some form of gain.  Winners Br. 46–53; *see* Winners Br. 5, 12–13, 15 (making similar accusations).  Even so, Winners's concern is entirely irrelevant to the issue Winners is appealing, the question of what types of transactions get Section 503(b)(1) priority.  *See* Winners Br. 3–4 (Statement of the Issues).

Winners's claims with respect to inducement.   Accordingly, there has been no decision from the Bankruptcy Court that Winners can even ask this Court to overturn with respect to its claim that it was induced by the Vendor Comfort Motion.

The sole question before the bankruptcy court and on appeal now is whether the mere fact of post-petition arrival of goods gives rise to an administrative claim, when the transaction was entered into and completed entirely pre-petition.   The answer to that question is decidedly "no."

## <u>CONCLUSION</u>

For the foregoing reasons, Sears respectfully requests that the Court affirm the appealed order.

Dated:     New York, New York
           February 3, 2020

                                Respectfully submitted,

                                WEIL, GOTSHAL & MANGES LLP

                                By:   */s/ Paul R. Genender*
                                      Ray C. Schrock, P.C.
                                      David J. Lender
                                      Paul R. Genender
                                      Gregory Silbert
                                      Garrett A. Fail
                                      Jared R. Friedman

                                      Ray.Schrock@weil.com
                                      David.Lender@weil.com
                                      Paul.Genender@weil.com
                                      Gregory.Silbert@weil.com
                                      Garrett.Fail@weil.com
                                      Jared.Friedmann@weil.com

                                      767 Fifth Avenue
                                      New York, New York 10153
                                      Telephone: (212) 310-8000
                                      Facsimile: (212) 310-8007

                                      *Attorneys for Sears Holdings*
                                      *Corporation, et al.*

**AKIN GUMP STRAUSS HAUER**
**& FELD LLP**

By: _**/s/ Z.W. Julius Chen**_
         Ira S. Dizengoff
         Philip C. Dublin
         Joseph L. Sorkin
         Z.W. Julius Chen
         idizengoff@akingump.com
         pdublin@akingump.com
         jsorkin@akingump.com
         chenj@akingump.com

         One Bryant Park
         New York, New York 10036
         Telephone: (212) 872-1000
         Facsimile: (212) 872-1002

         *Attorneys for the Official Committee*
         *of Unsecured Creditors of Sears*
         *Holdings Corporation, et al.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of the Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(i) because it contains 5068 words, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g).

This brief complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:                  February 3, 2020

By: <u>/s/ **Paul R. Genender**</u>
Paul R. Genender