Case No. 7:19-cv-10231-NSR

---

*In the United States District Court*
*for the Southern District of New York*

WINNERS INDUSTRY CO., LTD.,

Appellant,

v.

SEARS HOLDINGS CORPORATION,

Appellee.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK,
*IN RE SEARS HOLDINGS CORP., ET AL., DEBTORS*,
CASE NO. 7:18-BK-23538-RDD

---

**REPLY BRIEF OF APPELLANT, WINNERS INDUSTRY CO., LTD.**

---

CALFEE, HALTER & GRISWOLD LLP
Wall Street Plaza
88 Pine Street, 14th Floor
New York, NY 10005-1802
Telephone: (888) 225-3331
H. Jeffrey Schwartz
jschwartz@calfee.com

-and-

CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
Telephone: (216) 622-8200
Gus Kallergis
Ronald McMillan
gkallergis@calfee.com
rmcmillan@calfee.com

-and-

CALFEE, HALTER & GRISWOLD LLP
2800 First Financial Center
255 East Fifth Street
Cincinnati, OH 45202-4728
Telephone: (513) 693-4880
Larry K. Wilcher
lwilcher@calfee.com

*Attorneys for Appellant,*
*Winners Industry Co., Ltd.*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........ i

TABLE OF CASES, STATUTES AND OTHER AUTHORITIES ........ iii

INTRODUCTION ........ 1

ARGUMENT ........ 4

A. Appellees Admit Existing 503(b)(1) Law Universally Confirms Administrative Expense Priority for Goods under Prepetition Orders Received by DIPs. ........ 4

1. Post-BAPCPA: Winners Agrees with the Debtors' Reasoning and Legal Conclusions Set Out in the Sears VCM ........ 4

2. Pre-BAPCPA: Winners Agrees with the VCO Issued by Judge Drain in the Delphi Chapter 11 Cases. ........ 10

3. Appellees' Attempt to Distort and Wish Away the Existing 503(b)(1) Law Should Be Rejected. ........ 13

B. A Sale *Transaction* Is Not "Complete" Upon Shipment and Title Transfer, but Rather Upon the Debtors' Receipt and Acceptance of the Goods, Signaling the Seller's Relinquishment of Control Over the Goods. ........ 15

1. The Debtors Derived Complete Legal Consideration from Winners Only Upon Their Physical Receipt of the Winners Goods Postpetition ........ 16

2. Relinquishing Control of the Winners Goods and Permitting the Debtors to Physically Receive the Goods Constitutes a Postpetition Transaction. ........ 17

3. The Debtors' Obligation to Pay for Pre/Post Goods Arises Upon Their Receipt and Acceptance Postpetition. ........ 20

C. Harmonizing Section 503(b)(1) and Section 503(b)(9) is Required under Applicable Law and Controlling Rules of Statutory Construction. ........ 23

CONCLUSION ........ 26

CERTIFICATE OF COMPLIANCE....................................................................28

PROOF OF SERVICE ..............................................................................30

**TABLE OF CASES, STATUTES AND OTHER AUTHORITIES**

**Cases** **Page(s)**

*In re A.C.E. Elevator Co., Inc.*,
347 B.R. 473 (Bankr. S.D.N.Y. 2006)....................7

*In re Adelphia Bus. Solutions, Inc.*,
296 B.R. 656 (Bankr. S.D.N.Y. 2003)....................16

*In re Allied Nevada Gold Corp.*,
Case No. 15-10503 (Bankr. Del. Apr. 15, 2015)....................5

*In re Ames Dept' Stores, Inc.*,
Case No. 01-42217 (Bankr. S.D.N.Y. Aug. 20, 2001)....................12

*In re Chateaugay Corp.*,
10 F.3d 944 (2d. Cir. 1993)....................7

*In re CP III Ltd. P'ship.*,
224 B.R. 206 (Bankr. M.D. Fla. 1998)....................11

*In re Delta Air Lines, Inc.*,
Case No. 05-17923 (Bankr. S.D.N.Y. Sept. 16, 2005)....................12

*In re Delphi Corporation*,
Case No. 05-4481 RDD (Bankr. S.D.N.Y. Oct. 8, 2005)....................*passim*

*In re Enron Corp.*,
Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 3, 2001)....................12

*In re Enron Corp.*,
279 B.R. 79 (Bankr. S.D.N.Y. 2002)....................16

*In re FirstEnergy Solutions Corp.*,
Case No. 18-50757 (Bankr. N.D. Ohio May 8, 2018)....................5

*In re Fleming Co.*,
Case No. 03-10945 (Bankr. D. Del. Apr. 3, 2003)....................12

*In re Jartran, Inc.*,
732 F.2d 584 (7th Cir. 1984)....................11

*In re Magellan Health Services, Inc.*,
Case No. 03-40515 (Bankr. S.D.N.Y. Mar. 11, 2003)....................................12

*In re Mammoth Mart, Inc.*,
536 F.2d 950 (1st Cir. 1976) ..........................................................................11

*In re Moltech Power Sys., Inc.*,
273 B.R. 268 (Bankr. N.D. Fla. 2002)............................................................11

*In re National Sugar Refining Co.*,
27 B.R. 564 (S.D.N.Y. 1983) ..........................................................................19

*In re Northwest Airlines Corp.*,
Case No. 05-17930 (Bankr. S.D.N.Y. Sept. 15, 2005) ....................................12

*In re QCE Finance*,
Case No. 14-10543 (Bankr. Del. Mar. 17, 2014)...............................................5

*In re REFCO, Inc.*,
No. 07 CIV. 4784 (DLC), 2008 WL 140956 (S.D.N.Y. Jan. 14, 2008) ...........19

*In re Trico Steel Co., L.L.C.*,
282 B.R. 318 (Bankr. D. Del. 2002)................................................................19

*In re Westpoint Stevens, Inc.*,
Case No. 03-13532 (Bankr. S.D.N.Y. June 3, 2003).......................................12

*In re Winn-Dixie Stores, Inc.*,
Case No. 05-11063 (Bankr. S.D.N.Y. Mar. 15, 2005)....................................12

*In re World Imports*, Ltd.,
862 F.3d 338 (3d Cr. 2017) ............................................................................24

*Matter of Pester Refining Co.*,
66 B.R. 801 (S.D. Iowa 1986) .........................................................................19

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*,
135 S. Ct. 2507 (2015) ....................................................................................24

*Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*,
789 F.2d 98 (2d Cir. 1986) ................................................................................4

**Statutes** **Pages(s)**

11 U.S.C. § 363 .......... 7

11 U.S.C. § 503(b) .......... 7, 10, 11

11 U.S.C. § 503(b)(1) .......... *passim*

11 U.S.C. § 503(b)(9) .......... *passim*

**Other Authorities** **Pages(s)**

CISG Article 38(1) .......... 20

CISG Article 58(3) .......... 22

Federal Rule of Bankruptcy Procedure 9011 .......... 26

Federal Rule of Civil Procedure 11 .......... 26

U.C.C. § 2-310 .......... 20

U.C.C. § 2-606 .......... 20

U.C.C. § 2-607(1) .......... 21

U.C.C. § 2-711(1) .......... 21

## INTRODUCTION[1]

Over decades, hundreds of confirming or affirming motions have been filed, and corresponding confirming or affirming orders granting such motions have been unfailingly entered by bankruptcy courts (including the bankruptcy judge below), in this and all other major bankruptcy jurisdictions throughout the nation expressly recognizing that claims for goods ordered by prospective debtors and physically received and accepted by them in their capacity as debtors in possession ("DIPs") (*i.e.*, Pre/Post Goods) are, as a matter of longstanding, settled law, entitled to administrative expense priority under section 503(b)(1) of the Bankruptcy Code (the "Existing 503(b)(1) Law"[2]). Undisclosed by Appellees to this Court, other than the Appealed Order, no such confirming or affirming order under Existing 503(b)(1) Law has been interpreted or applied by a bankruptcy court (or appellate tribunal) in a reported or otherwise available unreported decision to deprive 503(b)(1) administrative expense priority to claims for Pre/Post Goods.

---

[1] Defined terms, not otherwise defined herein, shall have the meanings given to them in the opening *Brief of Appellant Winners Industry Co., Ltd.* ("Winners Brief"). Appellees' opening brief is cited as "Appellees Brief." References to "A-____" are citations to the Appendix filed concurrently with the Winners Brief and as supplemented concurrently with this Reply.

[2] "Existing 503(b)(1) Law" includes, as each is defined herein, the VCOs (including the Cited VCOs, Akin VCOs and Delphi VCO), the Pre-BAPCPA Existing 503(b)(1) Law and the supporting law contained in the underlying vendor comfort motions supporting those VCOs (collectively, the "VCMs").

Appellees stand mute in the face of the irrebuttable presence of the Existing 503(b)(1) Law woven into the fabric of chapter 11 practice and that Debtors themselves submitted in this very chapter 11 case such a motion with such an attached proposed order, namely, the *Motion of Debtors for Interim and Final Authority to … **Confirm Administrative Expense Priority for Prepetition Orders Delivered to the Debtors Postpetition*** ... [A-174 (emphasis added)] (the "Sears VCM"), providing: "***Pursuant to section 503(b) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of necessary goods and services are afforded administrative expense priority because they benefit the estate postpetition***." [A-188 (emphasis added).] Accepting the Debtors' invocation of this legal basis for the relief as being consistent with Existing 503(b)(1) Law, the Bankruptcy Court below determined: ***"All undisputed obligations of the Debtors arising from the postpetition delivery or shipment [ ] of goods under the Prepetition Orders are granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code***[.]" [A-209 (emphasis added).]

Succumbing to the siren call of expediency over probity, Appellees in their Response deem nonexistent Existing 503(b)(1) Law and put forward in its stead an incomplete, incompatible argument they mischaracterize as, and erroneously denominate, "existing law." In doing so, they leave undisputed that (a) Winners, as

was its right, did not stop or recall the Winners Goods while in transit and (b) those goods were delivered into the physical possession of the Debtors and accepted by them after the Petition Date. To be sure, the current administrative insolvency of the Debtors' chapter 11 cases confers no license on Appellees to feign ignorance of Existing 503(b)(1) Law they themselves invoked in their chapter 11 cases or to continually press a contradictory, irreconcilable challenge to the administrative expense entitlement under Existing 503(b)(1) Law of the claims of Winners and other foreign vendors relating to their Pre/Post Goods.

Under both Existing 503(b)(1) Law standing alone and as read in harmony with section 503(b)(9), administrative expense priority attaches to goods ***received and accepted by a DIP***. Reading sections 503(b)(1) and 503(b)(9) otherwise leads to the perverse, absurd result of a vendor receiving an administrative expense priority for goods received by a debtor prepetition (within 20 days of the commencement of the bankruptcy case) but only a general unsecured claim for goods received afterward by a DIP. To impute such an anomalous, problematic result as intended by Congress defames it and runs afoul of governing principles of statutory construction.

## ARGUMENT

**A. Appellees Admit Existing 503(b)(1) Law Universally Confirms Administrative Expense Priority for Goods under Prepetition Orders Received by DIPs.**

Contrary to Appellees' false assertion, Winners embraces that under Existing 503(b)(1) Law there must be (i) a postpetition transaction and (ii) a benefit to the estate. *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986). To be sure, contrary to Appellees' argument, application of Occam's Razor to this controversy finds *McFarlin's* to be entirely consistent with, and a fundamental component of, Existing 503(b)(1) Law as therein the criteria to establish an administrative claim are thus plainly set out and present here in that under applicable commercial law the operative sale of goods transaction elements occurred between Winners and the Debtors postpetition. So viewed, Appellees' arguments suffer from a fatal flaw as resting on a false premise as to the nature and substance of Existing 503(b)(1) Law, thus ineradicably tainting their appellate argument in its entirety. Winners is thus entitled to the appellate relief it seeks herein.

1. Post-BAPCPA: Winners Agrees with the Debtors' Reasoning and Legal Conclusions Set Out in the Sears VCM.

As described in greater detail in the Winners Brief (see pages 24-29), under Existing 503(b)(1) Law, courts universally enter vendor comfort orders ("VCOs") granting vendors of goods under Prepetition Orders delivered into the hands of,

and accepted by, DIPs administrative expense priority claims under section 503(b)(1) of the Bankruptcy Code.[3] With their eyes wide shut, Appellees do not, and cannot, in good faith dispute the existence of Existing 503(b)(1) Law or the related practice they themselves and Appellees' counsel regularly recognize as valid thereunder, inasmuch as counsel for each of the Appellees themselves regularly seeks precisely such relief under their express invocation of Existing 503(b)(1) Law.[4] Brazenly ignored in the Appellees Brief, bankruptcy courts unfailingly adopt Existing 503(b)(1) Law as the legal predicate for their issuance

[3] *See* Winners Brief, footnotes 8 and 9, for examples of orders entered in cases across the country by Debtors' counsel and others (collectively, the "Cited VCOs"). To provide additional context to those Cited VCOs and the reasoning articulated for their entry, the underlying first-day motions that requested the relief are attached in the supplementary Appendix at A-3882 *et seq.* (collectively, the "First-Day VCMs").

[4] In addition to the many VCOs Debtors' counsel previously requested and obtained (*see* Winners Brief, footnote 9), Creditors' Committee counsel, when representing debtors, has similarly requested and obtained VCOs granting 503(b)(1) administrative expense priority to claims of vendors for Pre/Post Goods. *See, e.g.*, *In re FirstEnergy Solutions Corp.*, Case No. 18-50757 (Bankr. N.D. Ohio May 8, 2018)(granting 503(b) administrative expense priority status to undisputed obligations under prepetition orders); *In re Allied Nevada Gold Corp.*, Case No. 15-10503 (Bankr. Del. Apr. 15, 2015)(granting 503(b)(1) administrative expense priority status to "undisputed amounts ***for goods*** and services ***actually received and accepted by the Debtors*** on or after the Petition Date relating to Purchase Orders" (emphasis added)); *In re QCE Finance*, Case No. 14-10543 (Bankr. Del. Mar. 17, 2014)(granting 503(b)(1) administrative expense priority status to all amounts relating to undisputed obligations arising from prepetition purchase orders outstanding for goods provided to the debtors on or subsequent to the petition date)(collectively, the "Akin VCOs"). Copies of the Akin VCOs and their underlying motions that requested the relief are attached in the supplementary Appendix at A-4137 *et seq*.

of VCOs by which they issue confirming, not *de novo*, grants of administrative expense priority to vendors supplying goods to DIPs meeting their need for the uninterrupted receipt of goods necessary to operate their businesses and thus maintain their going concern value. Under Existing 503(b)(1) Law, bankruptcy courts do so on the legal basis that a DIP's acceptance of those goods both constitutes a postpetition transaction and provides a postpetition benefit to the bankruptcy estates. Until the entry of the Appealed Order, no bankruptcy court had been asked to overturn in effect its own VCO and Existing 503(b)(1) Law in the process, and no bankruptcy court had previously done so. As a result, both the Debtors' Objection and the issuance of resulting Appealed Order may thus both be seen as aberrational.

This point is clearly reflected in the Sears VCM, in which the Debtors themselves recite and admit these constituent points of Existing 503(b)(1) Law:

*[Need for Uninterrupted Flow of Goods –Recall or Stoppage of Goods]*

> **Prepetition [Vendor Purchase] Orders**
>
> 19. Prior to the Commencement Date, and in the ordinary course of business, the Debtors ordered approximately $162 million in Merchandise from suppliers and vendors that will not be delivered until on or after the Commencement Date (the "Prepetition Orders"). These suppliers and vendors may be concerned that, because the Debtors' obligations under the Prepetition Orders arose prior to the Commencement Date, such obligations will be treated as general unsecured claims in these Chapter 11 Cases. ***Accordingly, certain vendors may refuse to provide goods to the Debtors (or may recall shipments thereof) purchased pursuant to the Prepetition Orders***

unless the Debtors issue substitute purchase orders postpetition or obtain an order of the Court providing that all undisputed obligations of the Debtors arising from the postpetition delivery of goods subject to Prepetition Orders are afforded administrative expense priority status under section 503(b) of the Bankruptcy Code.

20. ***To prevent any disruption to the Debtors' retail operations, and given that Merchandise delivered on, within 20 days prior to, and after the Commencement Date is afforded administrative expense priority under section 503(b) of the Bankruptcy Code***, the Debtors seek an order ***confirming administrative expense priority under section 503(b) of the Bankruptcy Code to all undisputed Prepetition Orders*** and authorizing the Debtors to satisfy such obligations in the ordinary course of business.

...

*[Admission of Settled Existing 503(b)(1) Law – Pre/Post Goods Qualify for Administrative Expense Priority]*

**C. The Obligations Owed Under the Prepetition Purchase Orders for Postpetition Goods and Services Are Administrative Expense Claims Under Section 503(b) of the Bankruptcy Code**

32. ***Pursuant to section 503(b) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of necessary goods and services are afforded administrative expense priority because they benefit the estate postpetition***. ***11 U.S.C. § 503(b)(1)(A)***; *see In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d. Cir. 1993)(holding that an obligation arising from the postpetition performance relating to a prepetition transaction is entitled to administrative expense priority); *In re A.C.E. Elevator Co., Inc.*, 347 B.R. 473, 481 (Bankr. S.D.N.Y. 2006)(holding that to receive a claim under section 503 a claimant must provide a postpetition benefit to the estate). Additionally, under section 363 of the Bankruptcy Code, ***the Debtors can continue to operate in the ordinary course of business including honoring postpetition obligations under Prepetition Orders without prior court approval***.

*[Admission of Confirmatory Nature of Relief and Need to Avoid Disruption]*

> 33. ***Accordingly, granting the relief sought herein with respect to the Prepetition Orders will not provide the Vendors with any greater priority than they would otherwise be entitled to, and will not prejudice any part[y] in interest***. Absent such relief, the Debtors may be required to expend substantial time and effort reissuing the Prepetition Orders to provide their vendors with assurance of administrative priority. -This disruption to the continuous flow of goods and services to the Debtors would seriously impact the Debtors' ability to operate their business. Without the support of their vendors, the Debtors will incur significant costs and lose valuable business relationships to the detriment of all parties in interest. Therefore, the obligations owed under the Prepetition Orders relating to goods delivered postpetition should be explicitly granted administrative expense status.

[A-174 at 182-83,88-89 (emphasis added).] Winners agrees *en toto* therewith. As drafted and submitted by the Debtors on the basis of Existing 503(b)(1) Law, the Sears VCM admits and confirms of record before this Court that Pre/Post Goods satisfy the elements of section 503(b)(1) and thus establish their entitlement to an administrative expense distributive priority status.

Under Existing 503(b)(1) Law, the basis for the confirmatory relief addresses the Debtors' need to enjoy an uninterrupted supply of goods necessary for their businesses—"vendors may refuse to provide goods to the Debtors (or ***may recall shipments thereof***)." Thus, the Sears VCM seeks to ensure, **through confirming Existing 503(b)(1) Law**, that vendors will permit physical receipt of the goods into the Debtors' desperate hands. In consequence, the assurance of physical receipt occurs not when goods subject to stoppage or recall in transit are

merely dropped off with a freight forwarder or common carrier in China or elsewhere.

In granting the Sears VCM, the Bankruptcy Court entered the Final Vendor Comfort Order (the "Sears VCO") similar to that which scores of other bankruptcy courts have routinely heard and granted and continue to do so, merely confirming the universally accepted legal conclusion under Existing 503(b)(1) Law that Pre/Post Goods satisfy the elements required for the attachment of administrative expense priority:

> ***All undisputed obligations of the Debtors arising from the postpetition delivery or shipment [ ] of goods under the Prepetition Orders are granted administrative expense priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code***[.]

[A-209 (emphasis added).] Thereunder, the confirmatory grant of priority under section 503(b)(1) is explicit and irrevocable.

The Sears VCO, Cited VCOs and Akin VCOs provide compelling authority that well-settled Existing 503(b)(1) Law, rather than Appellees' sham presentation thereof, grants administrative expense priority to Pre/Post Goods not as a new right but rather in confirmation that postpetition delivery (*i.e.*, a postpetition transaction with a DIP who receives and accepts the goods) provides a postpetition benefit satisfying the elements for granting an administrative expense claim under Existing 503(b)(1) Law, including Second Circuit law.

2. Pre-BAPCPA: Winners Agrees with the VCO Issued by Judge Drain in the Delphi Chapter 11 Cases.

Moreover, although ignored by Appellees herein, the practice of confirming administrative expense priority for Pre/Post Goods predates the October 17, 2005 effective date of BAPCPA which included section 503(b)(9) (the "Pre-BAPCPA Existing 503(b)(1) Law") and therefore constitutes "existing law" when Congress enacted BAPCPA. In the chapter 11 cases of Delphi Corporation and its affiliated debtors (collectively, "Delphi")—a pre-BAPCPA case in the Southern District of New York—Judge Robert Drain, the Bankruptcy Judge presiding over the Debtors' chapter 11 cases, ordered, adjudged and decreed that:

> The subcontractors, suppliers, and ***vendors shall have administrative expense priority claims under 11 U.S.C. § 503(b) for those undisputed obligations arising from prepetition purchase orders outstanding on the Petition Date relating to*** materials, supplies, ***goods***, products, and related items ***received and accepted by the Debtors on or subsequent to the Petition Date***.

*In Delphi Corporation,* Case No. 05-44481 RDD (Bankr. S.D.N.Y. Oct. 14, 2005) (RDD) (emphasis added) (the "Delphi VCO").

The Delphi debtors' legal basis for the relief granted in the Delphi VCO parallels the Debtors' request in the Sears VCM—*i.e.*, the need for the uninterrupted supply of goods to the DIP:

> 17. ***Under the provisions of section 503(b)(1)(A) of the Bankruptcy Code, all obligations that arise in connection with the postpetition delivery of Goods to the Debtors are, by definition, administrative expenses***....

18. Absent the relief requested in this Motion, the Debtors would be required to expend substantial time and resources to (i) convince the Vendors of the Debtors' authority to make certain payments, (ii) reissue the Outstanding Orders, or (iii) establish their right to retain the goods and products. The attendant disruption to the continuous flow of goods, products, and supplies to the Debtors and their manufacturing facilities would likely result in the rapid deterioration of the Debtors' going concern value and, thus, undermine the Debtors' prospects for a successful reorganization. Therefore, the Debtors request that this Court grant an order confirming administrative expense treatment for such claims.

Applicable Authority [Pre-BAPCPA Existing 503(b)(1) Law]

19. Section 503(b)(1)(A) of the Bankruptcy Code governs the allowance of administrative expenses, including "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). Administrative expense priority status is granted when "the debt both (1) 'arise[s] from a transaction with the debtor-in-possession' and (2) is 'beneficial to the debtor-in-possession in the operation of the business.'" *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984) (quoting *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)); *see also In re Moltech Power Sys., Inc.*, 273 B.R. 268, 271 (Bankr. N.D. Fla. 2002); *In re CP III Ltd. P'ship.*, 224 B.R. 206, 208 (Bankr. M.D. Fla. 1998).

20. ***The postpetition receipt and acceptance of the Goods satisfies the first element of the foregoing test. With respect to the second element, not only are the Goods beneficial to the Debtors, they are absolutely critical for the uninterrupted operation of the Debtors' production facilities.*** Without such Goods, the Debtors cannot manufacture and deliver Goods to their customers. ***Accordingly, the Debtors' postpetition receipt of Goods on account of Outstanding Orders gives rise to postpetition claims in favor of the Vendors, claims that are entitled to administrative expense priority status under section 503(b) of the Bankruptcy Code***.

> 21. Relief similar to that requested herein has been granted in other large chapter 11 cases in this district. *See, e.g., In re Delta Air Lines, Inc.*, Case No. 05-17923 (Bankr. S.D.N.Y. Sept. 16, 2005); *In re Northwest Airlines Corp.*, Case No. 05-17930 (Bankr. S.D.N.Y. Sept. 15, 2005); *In re Winn-Dixie Stores, Inc.*, Case No. 05-11063 (Bankr. S.D.N.Y. Mar. 15, 2005); *In re Westpoint Stevens, Inc.*, Case No. 03-13532 (Bankr. S.D.N.Y. June 3, 2003); *In re Fleming Co.*, Case No. 03-10945 (Bankr. D. Del. Apr. 3, 2003); *In re Magellan Health Services, Inc.*, Case No. 03-40515 (Bankr. S.D.N.Y. Mar. 11, 2003); *In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 3, 2001); *In re Ames Dept' Stores, Inc.*, Case No. 01-42217 (Bankr. S.D.N.Y. Aug. 20, 2001).

*Motion for Order under 11 U.S.C. § 503(b) Confirming Grant of Administrative Expense Status to Obligations Arising From Postpetition Delivery of Goods and Authorizing Debtors to Pay Such Obligations in the Ordinary Course of Business* (Docket No. 20), *In re Delphi Corporation*, Case No. 05-4481 RDD (Bankr. S.D.N.Y. Oct. 8, 2005) (the "Delphi VCM").[5] The Pre-BAPCPA Existing 503(b)(1) Law on the administrative priority entitlement of Pre/Post Goods has since grown into a vast body of clearly articulated legal precedents and established related practice comprising the constituent elements of Existing 503(b)(1) Law composed of in excess of a hundred VCOs confirming administrative expense priority entitlements for claims relating to Pre/Post Goods. The Appellees Brief shirks its responsibility to advise the Court thereof or to even condescend to

---

[5] Copies of the Delphi VCO and the Delphi VCM are attached in the supplementary Appendix at A-4244 *et seq*.

address the relevant, material legal conclusions articulated in the multitudinous Existing 503(b)(1) Law, VCMs and VCOs.

3. Appellees' Attempt to Distort and Wish Away the Existing 503(b)(1) Law Should Be Rejected.

The Sears VCO confirms the heretofore uncontroversial undisputed basic legal standards under Existing 503(b)(1) Law, which have been in place and followed in the ordinary course of chapter 11 bankruptcy practice for well over two decades. No amount of sophistry can brook dissent that the VCOs and their respective VCMs, taken together, conclusively demonstrate the content and application of Existing 503(b)(1) Law definitively establishing that, as a matter of settled law, Winners and other vendors of Pre/Post Goods are entitled an administrative expense priority claim under Existing 503(b)(1) Law on the grounds that the Debtors' receipt and acceptance of such goods postpetition constitutes a postpetition transaction, and the Debtors' acceptance of those goods provided a tangible postpetition benefit of value.

Rather than recognize and address the established legal precedent and practice under Existing 503(b)(1) Law, Appellees seek to have the Court view the Appealed Order through a Lewis Carroll "looking-glass" to obscure the Existing 503(b)(1) Law and thereunder the established legal import of the Sears VCM and the Sears VCO. Appellees seek to obfuscate a central element of Existing 503(b)(1) Law, *i.e.*, that VCOs are merely confirmatory of Existing 503(b)(1) Law

and, therefore, do not grant "new rights." Indeed, Appellees assert that the Debtors were "not intending to overturn long-established and unanimous precedent" by adding "nothing herein shall create, nor is intended to create any rights in favor of or enhance the status of any claim held by, any party" to the Sears VCO. [Appellees Brief at 21 (*quoting* Sears VCO, A-204) (the "No Rights Clause").] Their through-the-looking-glass reading ignores "the long-established and unanimous precedent" under Existing 503(b)(1) Law followed in virtually all chapter 11 cases that postpetition physical delivery of goods under Prepetition Orders gives rise to administrative expense priority under section 503(b)(1) under Existing 503(b)(1) Law. The No Rights Clause does not and cannot invalidate the express ***confirmation*** of administrative expense priority to Pre/Post Goods under Existing 503(b)(1) Law—*i.e.*, because such administrative expense priority entitlement arises independently under Existing 503(b)(1) Law from a postpetition transaction (actual receipt and acceptance of the goods by the Debtors) to the indisputable, tangible benefit of the Debtors' estates. Appellees cannot in good faith assert, contrary to the express confirmatory grant by the Bankruptcy Court, that "undisputed obligations of the Debtors arising from the postpetition delivery or shipment of goods under the Prepetition Orders" are ***not*** entitled to 503(b)(1)(A) administrative expense priority status.

Appellees cited no persuasive authority much less controlling case law specifically on point with respect to the sale of goods challenging or overturning this longstanding, pervasively accepted practice under Existing 503(b)(1) Law embodied in the VCOs, which further demonstrates the settled judicial construction of the Existing 503(b)(1) Law with respect to their administrative expense priority entitlement. The ersatz thin legal gruel served up by the Appellees as putatively persuasive "existing" case law must yield to the overwhelming Existing 503(b)(1) Law reflected in the hundreds of VCOs issued in the Southern District of New York, Delaware and other active chapter 11 jurisdictions confirming under Existing 503(b)(1) Law that administrative expense priority attached to claims relating to Pre/Post Goods.[6]

**B. A Sale *Transaction* Is Not "Complete" Upon Shipment and Title Transfer, but Rather Upon the Debtors' Receipt and Acceptance of the Goods, Signaling the Seller's Relinquishment of Control Over the Goods.**

Unwilling to come to grips with the Existing 503(b)(1) Law and corresponding chapter 11 practice confirming under VCOs administrative expense priority for claims relating to Pre/Post Goods, Appellees speciously

[6] Appellees cite the same few cases cited by the Debtors in their initial objection to the AEC Motion, none of which are persuasive much less controlling. The cases, most of which are at least 20 to 30 years old and none of which arose in substantial chapter 11 cases or from this district, are distinguishable, outliers or inconsistent with the plethora of VCOs that reach the diametrically opposite conclusion. Moreover, because they all predate the enactment of section 503(b)(9), they have effectively been superseded by the statute and its confirmation of the Pre-BAPCPA Existing 503(b)(1) Law.

contend that the completion of a sale of goods transaction occurs at the time title transfers, in this case when the Winners Goods were placed with a common carrier, FOB China,[7] ignoring without warrant all postpetition legal relations long recognized in Existing 503(b)(1) Law and under relevant commercial law that exist between a vendor and buyer of goods that satisfy even the general test for granting an administrative expense priority. This glossy, disingenuous mischaracterization of the legal nature of commercial sale of goods transactions lacks even a pretense of legal foundation and thus warrants rejection.

Appellees themselves expressly recognize the purpose of section 503(b)(1) is to "encourage third-parties ***to supply the debtor-in-possession with goods*** and services with the goal of achieving a reorganization to benefit all creditors," *In re Enron Corp.*, 279 B.R. 79, 86 (Bankr. S.D.N.Y. 2002) (emphasis added), and to "encourage vendors to deal with the post-petition estate." *In re Adelphia Bus. Solutions, Inc.*, 296 B.R. 656, 663 (Bankr. S.D.N.Y. 2003). Yet, they then advocate an application of the law in a manner that would, per the VCMs, destroy

[7] As explained in the Winners Brief, the Bankruptcy Court did not agree with the Appellees' argument that Winners was not entitled to administrative expense priority because there was no postpetition performance or that performance was complete at the time of shipment from China. Rather, the Bankruptcy Court accepted that there was postpetition performance, but it erroneously concluded that there was not a postpetition transaction because the performance was "based on a prepetition contract." [Winners Brief at 22-24.] Under Existing 503(b)(1) Law, a Pre/Post Goods transaction constitutes a postpetition transaction as a matter of law.

most DIPs' ability to obtain the benefits of actual receipt of goods and survive as a going concern seeking reorganization. Ignoring Existing 503(b)(1) Law and the legal significance thereunder of Winners's neither stopping, nor recalling the Winners Goods while in transit to allow their physical receipt by the Debtors, Appellees, unburdened by legal authority consistent with Existing 503(b)(1) Law, assert "[o]nce Winners had dropped off its goods at the port in China, its contractual obligations were complete and no further performance was required." [Appellees Brief at 12.] But, of course, in this Appellees knowingly err, as established above, sufficient postpetition legal relations existed between the Debtors and Winners under Existing 503(b)(1) Law for Pre/Post Goods to constitute a postpetition transaction with the Debtors.

1. The Debtors Derived Complete Legal Consideration from Winners Only Upon Their Physical Receipt of the Winners Goods Postpetition.

Again, as described above, Appellees knowingly ignore the multitude of VCOs under Existing 503(b)(1) Law determining as a matter of law that a DIP's receipt and acceptance of goods postpetition constitutes a postpetition transaction. As recognized by Existing 503(b)(1) Law, courts uniformly hold that a vendor provides actual consideration when it delivers the goods postpetition into the physical possession of the DIP. *See*, *e.g.*, Delphi VCO; Cited VCOs; Akin VCOs. It is therefore conclusively established under Existing 503(b)(1) Law that the

Debtors' physical receipt and acceptance constitutes a postpetition transaction for purposes of section 503(b)(1) as a matter of law.

2. Relinquishing Control of the Winners Goods and Permitting the Debtors to Physically Receive the Goods Constitutes a Postpetition Transaction.

In repudiating the Debtors' representations and admissions in the Sears VCM, Appellees seek to destroy Existing 503(b)(1) Law, related chapter 11 practice and the dispositive legal significance ascribed thereunder to the right to stop and recall goods in transit and the value that is lost when sellers such as Winners relinquish those rights as to Pre/Post Goods to permit their receipt by DIPs. Appellees' contention that the Winners Goods sale transaction was completed when title passed to them ignores that Existing 503(b)(1) Law recognized that the live legal hand of Winners maintained control of the Pre/Post Goods the entire time they were in transit with the common carrier, even a common carrier selected and paid by Debtors. No agent or bailee of the Debtors is to be found in this legal scenario.

A seller relinquishes rights that it has in, and the control that it wields over, goods only when such goods are received by, and are in the physical possession of, the buyer. This is not, as Appellees insinuate, a speculative or alleged right. Vendors such as Winners have established legal rights under both the UCC and the CISG to stop and recall goods in transit to a financially suspect or bankrupt buyer and can thus deny the Debtors the actual benefit of receipt of those goods with no

resulting claim or other legal recourse in favor of the Debtors. *See* Winners Brief, at 21-22 (citing relevant U.C.C. and CISG sections giving right to stop and recall goods in transit prior to physical receipt by buyers). The right to stop and recall goods continues even after title has passed. *See, e.g., In re National Sugar Refining Co.*, 27 B.R. 564, 569 (S.D.N.Y. 1983) (passage of title did not affect seller's right to stop goods in transit).[8] Moreover, the exercise of the right to stop and recall goods is unaffected by the bankruptcy filing and does not violate the automatic stay. *See id.* at 572-73 (seller not required to seek stay relief prior to exercising its right of stoppage); *Matter of Pester Refining Co.*, 66 B.R. 801, 820 (S.D. Iowa 1986) (automatic stay does not affect seller's right to stop goods in transit). Ironically, stoppage or recall of goods in transit reflects the specific harm that the Debtors and other DIPs expressly seek to avoid in the Sears VCM and other VCMs, and a seller's forbearance from exercising those rights, which continues until the moment the goods are physically received by the Debtor, constitutes valuable legal consideration provided by Winners and similarly-situated sellers postpetition with respect to Pre/Post Goods.[9]

---

[8] *See also In re Trico Steel Co., L.L.C.*, 282 B.R. 318, 324 (Bankr. D. Del. 2002)(passage of title and delivery to common carrier who was not a bailee did not cut off seller's right to stop delivery).

[9] *See, e.g., In re REFCO, Inc.*, No. 07 CIV. 4784 (DLC), 2008 WL 140956, at *6 (S.D.N.Y. Jan. 14, 2008)("it is indeed well-established that bargained-for consideration can consist of '… a forbearance, or the creation, modification, or destruction of a legal relation,'" quoting Restatement 2d of Contracts § 71).

Had Winners exercised its right to stoppage in transit of the shipment of the Winners Goods, as was its lawful right, it is implausible that the transaction between the Debtors and Winners reached completion at the time of shipment. Consequently, Appellees' assertion that Winners and the Debtors had completed the transaction prepetition fails and accordingly warrants rejection.

3. The Debtors' Obligation to Pay for Pre/Post Goods Arises Upon Their Receipt and Acceptance Postpetition.

Appellees also ignore that, under Existing 503(b)(1) Law, Debtors' postpetition actions with respect to goods once in their physical possession and control constitutes yet another postpetition legal relation with postpetition implications. After Winners permitted the common carrier to conclude its postpetition delivery of the Winners Goods into their hands, the Debtors chose to accept rather than reject the goods—*i.e.*, another postpetition action with significant, material legal consequence. *See, e.g.*, U.C.C. § 2-310 (payment is due at the time and place at which buyer is to receive the goods, even if place of shipment is place of delivery); U.C.C. § 2-606 (acceptance of goods occurs after buyer has reasonable opportunity to reject but fails to make an effective rejection); CISG Article 38(1) (buyer has obligation to examine the goods). Appellees do not assert that Sears or its agent inspected and accepted the Winners Goods at the time they were placed with a common carrier, because that did in fact not occur.

Moreover, Appellees, in their effort to argue completion of the Winners transaction prepetition, erroneously assert that the Debtors' obligation to pay arose at the time of delivery to the common carrier, because the "consideration is provided when the creditor completed its performance ***and the obligation to pay arose***." [Appellees Brief, at 11 (emphasis added).] Appellees herein overlook that the Debtors' physical receipt of the Pre/Post Goods, which was a condition precedent to their right to inspect and decide whether to accept them, alone under law triggered their obligation to pay for those goods. Although the risk of loss of the goods may have transferred in China, because Pre/Post Goods, such as the Winners Goods, were not lost at sea and in fact were both received and accepted by the Debtors postpetition, the Debtors' obligation to pay for those goods was conditioned on the occurrence of those post-shipment actions. As noted in the AEC Motion, Winners's terms of payment were 74 days after shipment, affording the Debtors ample opportunity to inspect and in fact accept the Winners Goods after physical receipt. Therefore, with respect to the Winners Goods, payment was not due until after their receipt well subsequent to the Petition Date. [A-230.] Had the goods been nonconforming or otherwise rejected, the Debtors would not have been obligated under both the applicable purchase order and applicable law to pay Winners. *See, e.g.*, U.C.C. § 2-607(1) (buyer must pay at the contract rate for any goods accepted); U.C.C. § 2-711(1) (buyer may cancel sale if it rejects or justifiably

revokes acceptance of goods); CISG Article 58(3) (buyer not bound to pay until it has had an opportunity to examine the goods). Because the Debtors' undisputed obligation to pay for the Winners Goods arose after the Debtors' postpetition acceptance of the goods, further evidencing that the sale was not yet complete at the time the goods were placed with a common carrier in China, this postpetition transaction entitles Winners to an administrative expense priority under section 503(b)(1).

The Court should reject Appellees' erroneous conflation of the completion of the passage of title and risk of loss with the completion of the rights and obligations that make up the entirety of the sale of goods ***transaction***. Until receipt and acceptance of goods, nothing is owing. Examining the different components of the transaction under applicable commercial law establishes that the sale transaction remained incomplete upon delivery of goods to a common carrier, even if title and risk of loss, which are of no legal moment here, had passed. Physical delivery of the Winners Goods into the hungry hands of the Debtors and their eager acceptance thereof were the *sine qua non* of completion of the transaction. For the foregoing reasons, the existence of a postpetition transaction that warrants an administrative expense priority claim cannot be plausibly disputed.

**C. Harmonizing Section 503(b)(1) and Section 503(b)(9) is Required under Applicable Law and Controlling Rules of Statutory Construction.**

Finally, Appellees also mischaracterize Winners's arguments as set forth both at the May 21 Hearing and in the Winners Brief regarding the relevance of harmonization of section 503(b)(9) with section 503(b)(1) as an integral component of Existing 503(b)(1) Law. In the Winners Brief, Appellant asserted that the Bankruptcy Court erred by not recognizing the existing law under section 503(b)(1) of the Bankruptcy Code (*i.e.*, the Existing 503(b)(1) Law confirming and granting administrative expense priority to vendors for Pre/Post Goods received by DIPs) and that it is ***consistent*** with section 503(b)(9) of the Bankruptcy Code (*i.e.*, granting vendors of 20-Day Goods administrative expense priority for the value of goods received by the debtor in the 20 days before the bankruptcy filing). The Bankruptcy Court erred by not following the governing rules of statutory construction in the Second Circuit and the Supreme Court directing that the two subsections must be harmonized and when, as here, they can be harmonized, must not be read in a manner that led to absurd results. [Winners Brief, at 33-46.]

To continue their fictitious legal narrative, Appellees again ignore Existing 503(b)(1) Law, their VCMs and VCOs and the plausible readings of section 503(b)(1) that would conform with section 503(b)(9), including the Third

Circuit's *World Imports* decision interpreting section 503(b)(9).[10] Appellees, much like the Bankruptcy Court, focus on the presence of the word "received" in section 503(b)(9) and the absence of the word in section 503(b)(1) to suggest that Winners is requiring reading the word "received" into section 503(b)(1) as well. [Appellees Brief, at 17; *see also* Winners Brief, at 38-41.] To support their argument, Appellees stress that in 2005, when section 503(b)(9) was enacted, only minor changes were made to section 503(b)(1), misleadingly arguing:

> When Congress amends a statute while maintaining its operative language, Congress is presumed to adopt the prior judicial interpretation of the statute. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2520 (2015). Thus by reenacting Section 503(b)(1) substantially unchanged after such widespread, unanimous opinion about its meaning, Congress ratified that meaning. *Id.*

[Appellees Brief, at 17-18.]

When section 503(b)(9) was enacted, section 503(b)(1) was not amended in regard to Pre/Post Goods in light of the Pre-BAPCPA Existing 503(b)(1) Law under which Congress must be presumed to have known that thereunder vendors of Pre/Post Goods were already entitled administrative expense priority claims. Thus, the then, as now, settled law under section 503(b)(1) was and remains that administrative priority attached as a matter of law to Pre/Post Goods. This is

---

[10] *In re World Imports, Ltd.*, 862 F.3d 338, 342-45 (3d Cr. 2017)(determining that goods are not "received" for purposes of section 503(b)(9) until debtors or their agents take physical possession of the goods and rejecting the argument that common carriers qualify as debtor's agents).

amply and aptly demonstrated by the Delphi VCM and the cases cited therein, and the Delphi VCO, as the prevailing judicial interpretation of section 503(b)(1) before BAPCPA. The evolution of that body of law into the Existing 503(b)(1) Law has incontrovertibly assumed even greater institutional proportions in contemporary bedrock chapter 11 practice.

The Bankruptcy Court's and Appellees' singular focus on section 503(b)(1)'s not including the term "received" ignores without legal warrant that under Pre-BAPCPA Existing 503(b)(1) Law "receipt" was expressly required and that both 503(b) subsections address the sale of goods to a debtor. The Debtors' physical receipt of goods alone provides them with the benefit of the goods. Until such physical receipt, that benefit is not assured because Winners and other vendors can exercise their rights to prevent such receipt by stopping and recalling the goods in transit. Consequently, section 503(b)(1) and section 503(b)(9), consistent with VCMs and VCOs, both recognize and confirm grants of administrative expense priority based on a debtor's or DIP's physical receipt and acceptance of goods. The Debtors' current problematic financial condition does not alter the rules of decision applicable to this same topic within the same subsection of the Bankruptcy Code; they must be harmonized in good faith per the Supreme Court and the Second Circuit prescriptions.

Facing their current administrative insolvency and consequent difficult-at-best prospects for the occurrence of the Effective Date of their confirmed Plan, the Debtors have relentlessly fought to minimize the aggregate allowed administrative expense claims by employing unscrupulous dilatory tactics delaying resolution of straightforward legal questions by advocating legal theories contrary to both their own prior representations and admissions in the Sears VCM and the Existing 503(b)(1) Law confirming that vendor claims for Pre/Post Goods are entitled to an administrative expenses priority under section 503(b)(1) of the Bankruptcy Code as a matter of law. Winners expressly reserves its right to seek sanctions, including payment of its attorneys' fees, under Bankruptcy Rule 9011 and Federal Rule of Civil Procedure 11 for Appellees' dilatory tactics and unwarranted legal contentions that expressly contradict their own and their counsels' prior filings.

## CONCLUSION

For the forgoing reasons and the reasons articulated in the Winners Brief, Appellants request that this Court reverse the Bankruptcy Court's Appealed Order with instructions to apply Existing 503(b)(1) Law and direct the Bankruptcy Court to resolve the amount and priority of Winners's claims expeditiously without indulgence of further dilatory efforts by the Debtors or the Liquidating Trust, as successor.

Dated: February 18, 2020

Respectfully submitted,

*/s/ H. Jeffrey Schwartz*

CALFEE, HALTER & GRISWOLD LLP
Wall Street Plaza
88 Pine Street, 14th Floor
New York, NY 10005-1802
Telephone: (888) 225-3331
H. Jeffrey Schwartz

-and-

CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
Telephone: (216) 622-8200
Gus Kallergis
Ronald McMillan

-and-

CALFEE, HALTER & GRISWOLD LLP
2800 First Financial Center
255 East Fifth Street
Cincinnati, OH 45202-4728
Telephone: (513) 693-4880
Larry K. Wilcher

*Attorneys for Appellant, Winners Industry Co., Ltd.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SEARS HOLDINGS CORP., *et al.*,[11]<br><br>Debtors. | Chapter 11<br><br>Bankruptcy Case No. 18-23538 (RDD)<br><br>Jointly Administered |
| WINNERS INDUSTRY CO., LTD.,<br><br>Appellant,<br>v.<br><br>SEARS HOLDINGS CORPORATION,<br><br>Appellee. | Civil Action No. 7:19-cv-10231-NSR |

**APPELLANT'S CERTIFICATE OF COMPLIANCE**

NOW COMES Appellant, Winners Industry Co., Ltd., and hereby certifies that the instant Brief of Appellant, in Times New Roman, 14 pt. Font, contains 6,466

[11] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

words, less than the 6,500 words allowed in by Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(ii) and as calculated by the word count feature on the word processing system utilized in preparing the Brief.

Dated: February 18, 2020

Respectfully submitted,

*/s/ H. Jeffrey Schwartz*

CALFEE, HALTER & GRISWOLD LLP
Wall Street Plaza
88 Pine Street, 14th Floor
New York, NY 10005-1802
Telephone: (888) 225-3331
H. Jeffrey Schwartz

-and-

CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
Telephone: (216) 622-8200
Gus Kallergis
Ronald McMillan

-and-

CALFEE, HALTER & GRISWOLD LLP
2800 First Financial Center
255 East Fifth Street
Cincinnati, OH 45202-4728
Telephone: (513) 693-4880
Larry K. Wilcher

*Attorneys for Appellant, Winners Industry Co., Ltd.*

**PROOF OF SERVICE**

The undersigned hereby certifies that on February 18, 2020, a copy of the foregoing Reply Brief of Appellant Winners Industry Co., Ltd. was filed electronically in the Court's Case Management/Electronic Case Filing ("CM/ECF") system. The CM/ECF system will send notice of this filing to all parties, and, through the CM/ECF system, they may access the brief.

*/s/ H. Jeffrey Schwartz*
One of the Attorneys for Appellant